**IN THE COURT OF APPEALS OF IOWA**

No. 21-1970
Filed March 30, 2022

**IN THE INTEREST OF G.L.,**
**Minor Child,**

**D.L., Father,**
    Appellant.
_____

    Appeal from the Iowa District Court for Polk County, Brent Pattison, District

Associate Judge.


    A father appeals from the termination of his parental rights.  **AFFIRMED.**


    Barbara O. Hoffman, Des Moines, for appellant father.

    Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

    Bo Woolman and Erin Mayfield (until withdrawal) of the Youth Law Center,

Des Moines, attorneys and guardians ad litem for minor child.


    Considered by Tabor, P.J., and Greer and Ahlers, JJ.

**GREER, Judge.**

The father, D.L., had his parental rights to his child terminated in December 2021. He argues that the juvenile court should have granted him a six-month extension, created a guardianship instead of terminating his rights, or invoked a statutory exception to prevent termination. Because he failed to show he could resume caring for the child full-time within six months, did not prove a guardianship is in the child's best interests, and did not preserve error on the statutory exception argument, we affirm the juvenile court's decision.

**Background Facts and Proceedings.**

D.L. is the father of G.L., who was nine at the time of the termination hearing. The child's mother has a degenerative health condition, and the father was in prison, so the child lived with her adult half-brother on and off. The father was released from prison in January 2019, and the child moved in with him full time later that year. But the child was removed from the father's care in September 2020 when the Iowa Department of Human Services (DHS) received founded reports that the father was using methamphetamine with his paramour and that the child had witnessed domestic violence between the two. The father was arrested and went through drug court, which allowed him to do substance-abuse treatment. The child was adjudicated a child in need of assistance (CINA) that October and placed with the half-brother[1] and his fiancée.

This was not the father's first time through drug court. As the juvenile court stated, both in the initial order for temporary removal and in the termination order,

---

[1] This was the mother's older child.

substance abuse was a reoccurring theme in the father's life. While he seemed to do well in structured environments, he struggled to sustain sobriety long term.

At the time of the termination hearing, the father was living in a halfway house and had a full-time job. He was consistently attending Narcotics Anonymous and Alcoholics Anonymous meetings and had established a sponsor. He also completed a seventeen-week "Caring Dads" course. The social worker testified the father was engaging in all the services appropriately. Still, the child could not be placed with him in the halfway house, and he had at least three months before he could establish independent housing.[2] While the halfway house allows for visitation, which the father asked to have, it would only be possible with the drug court's approval.

The father's probation officer is quoted in DHS reports as saying the drug court team felt he needed to focus on himself and his sobriety before he could have contact with the child. As he moved through the program, though, visitation was expected to become less restricted. Still, only therapeutic contact was sanctioned at the time of the termination hearing. In line with this therapeutic contact, the father wrote an accountability letter to the child to be used in her therapy—this was the only contact between the two other than one visit while the father was in jail. At the time of the termination hearing, the child's therapist had not yet reported to the social worker how the child had reacted to the letter.

---

[2] The father testified his program at the halfway house was phased, and he was on phase two of five. Each phase takes at least three months, and independent housing was not allowed until phase four.

Another factor preventing contact was the child's preference—she consistently stated she was not interested in going back to her father's home, seeing him, or speaking with him. The child wrote a letter to the court explaining as much and expressing desire to stay with her brother and his fiancée. According to the social worker's testimony, the child is very comfortable in the home and well cared for. She has integrated into the family and has more consistently attended school and therapy while in their care. The couple is willing to adopt the child.

The father did not contest that he could not take over care of the child at the time of the termination hearing. Instead, he sought either a six-month extension or a guardianship, with the child placed with her brother. Either, he thought, would give him a chance to reconnect with his daughter. However, the social worker testified, and the juvenile court in its order agreed, that sufficient progress could not be made in six months and that guardianship was not in the child's best interests. The juvenile court ultimately terminated the father's parental rights under Iowa Code section 232.116(1)(f) (2021).

**Discussion.**

The father challenges the juvenile court's termination order, asserting that he should have been granted a six-month extension, the court should have created a guardianship, and the court should have invoked Iowa Code section 232.116(3)(a) as an exception to termination because the child was in the legal custody of a relative. Our review of termination decisions is de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We address each challenge in turn.

*A. Six-month extension.*

The father first argues the court did not prove the grounds for termination in Iowa Code section 232.116(1)(f). But really, he is seeking a six-month extension as allowed by Iowa Code section 232.104(2)(b). To do this, the parent seeking the extension has to show that the "impediments to placing [the child] with [the parent would] not exist in six months." *In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021). And the juvenile court would have had to enter an order to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). Our overarching concern in allowing for a delay is the child's best interests. *W.T.*, 967 N.W.2d at 323; *see also In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency."). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.*, 778 N.W.2d at 39.

We applaud the father for the many steps he has taken to becoming and remaining sober and hope that he continues in his progress. But that task had made him unable to care for or have contact with the child for over a year by the time of the termination hearing.[3] But more important to our review, the father still

---

[3] The strict requirements of drug court personnel impacted the father's lack of contact with the child as the focus was that he "work on himself first," but DHS tried to pursue visitation, appropriate first for the child but also considering the drug court limitations.

had a long way to go in his treatment before he could begin to reestablish independent housing and demonstrate an ability to remain sober outside the structured environment. *See C.B.*, 611 N.W.2d at 495 ("Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" (citation omitted)). Achieving stability in a structured setting is far different than addressing challenges with drug use without that support. In the end, it is unclear when the father's visitations can be restored to a level where he can prove his ability to be a successful parent for the child and if he can remain drug-free outside the structured setting. As the father could not provide assurances that barriers to reunification with the child would be hurdled within six-months, an extension was not appropriate.

*B. Guardianship.*

The father next argues that the court should have established a guardianship. As we have long acknowledged, guardianships are "not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018) (citation omitted). They do not provide the same stability of permanency as is available through termination. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (noting the child's interest in a safe, permanent home); *see also A.S.*, 906 N.W.2d at 477–78 (explaining the limitations of a guardianship on permanency). Permanency is important; when determining the child's best interests, one of our primary concerns is "the best placement for furthering the long-term nurturing and growth of the child." Iowa Code § 232.116(2); *compare A.S.*, 906 N.W.2d at 477–

78 (explaining the limitations of a guardianship and deciding against the option), *with In re B.T.*, 894 N.W.2d 29, 34 (Iowa Ct. App. 2017) (allowing for a guardianship when termination was not in the ten-year-old child's best interests and the child wished to maintain his relationship with his parent).

Here, the father argues a guardianship was the appropriate solution because it would be less destructive of the parent-child relationship and would serve as a less permanent option than termination.[4] We disagree. The juvenile court correctly noted that "a guardianship order would not establish permanency—it would serve instead as a longer extension." Assuming the child's brother would even agree to a guardianship, "[a]n appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child." *In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997). As stated above, this extension goes against the child's interests in establishing a permanent, secure home. And the father has provided no argument that a guardianship would be in the child's best interests. In these circumstances, where neither the father and child nor the father and would-be guardian share a close relationship, a guardianship would be inappropriate. *See B.T.*, 894 N.W.2d at 34 (concluding a guardianship should be established where the parent and child shared a close relationship, the parent and guardian "have a close, mature, and

---

[4] Both in this section and the next of the father's argument, he asserts that the child's current placement with her brother could become unstable because the brother and his fiancée are not yet married. We note that he provides no proof of instability and there is ample evidence in the record both that the child wants to stay with the couple and, as the juvenile court put it, "[t]hey have done an admirable job of meeting her needs over the course of the case."

healthy relationship that is free of conflict," and where it was clear the parent and guardian could "work together in the best interests of the child").

*C. Statutory exceptions.*

Iowa Code section 232.116(3)(a) allows the court not to terminate parental rights if a relative has legal custody of the child.[5] The father is right that, because the child is in the temporary legal custody of her brother and his fiancée, the court could elect to use this exception. But, the exception is permissive, not mandatory—it remains in the court's discretion to determine whether, given the circumstances of the family in front of them, it would be in the best interests of the child to avoid termination. *A.S.*, 906 N.W.2d at 475. While the burden to prove the grounds for termination rests on the State, the burden of proving an exception to termination rests on the parent seeking to benefit from it. *A.S.*, 906 N.W.2d at 476.

The father presented no evidence to the juvenile court about the exception, but it still found that "[e]ven if they had presented such evidence, after considering [the child's] age, the trauma she has experienced in her parents' care, her placement in the same home since the start of this case, her need for permanency,

---

[5] The father also asserts that termination is unnecessary because he made a genuine effort to follow the case plan, maintain communication with the child, and establish and maintain a place of importance in the child's life. He pulls this language from, and cites, Iowa Code section 232.116(1)(e)(3). We note that this language is not an exception, but an element of a separate statutory ground for termination. Here, the juvenile court found insufficient evidence to terminate under this section. As the language does not apply in this appeal, we address it no further. *Cf. In re K.M.*, No. 20-1028, 2020 WL 5946404, at *2 n.3 (Iowa Ct. App. Oct. 7, 2020) ("To the extent the mother's brief argues her parental rights should not have been terminated pursuant to Iowa Code section 232.116(1)(f), as the juvenile court did not rely on this section as a ground for termination, we need not address the same.").

and the diminished attachment given the parents' lack of consistent contact," the exceptions were not warranted. As the father did not raise the issue in the termination hearing before the juvenile court, error has not been preserved. *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012) ("[T]he general rule that appellate arguments must first be raised in the trial court applies to CINA and termination of parental rights cases.").

**Conclusion.**

Because the father has not shown that barriers to reunification would not exist following a six-month extension, proved that a guardianship is in the child's best interests, nor preserved error on the statutory exceptions, we affirm the termination of the father's parental rights.

**AFFIRMED.**